UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No.:1:13-cr-17 |
| v. | ) | |
| | ) | Collier/Carter |
| | ) | |
| KENNETH SCOTT | ) | |

## REPORT AND RECOMMENDATION

### I. Introduction

Defendant Kenneth Scott's Motion to Suppress (Doc. 12) is before the undersigned Magistrate Judge having been referred by the District Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Defendant is charged with various federal firearm crimes. The Defendant seeks suppression of any and all evidence seized by law enforcement on the ground that the driver of his vehicle lacked common authority to consent to the search of the vehicle and the contents therein and that the search warrant affidavit did not support probable cause to search his residence. Because I find that the driver had the necessary common authority to give consent to search the vehicle and its contents and that the search warrant was supported by probable cause, it is RECOMMENDED that the Defendant's motion to suppress be DENIED.

### II. Relevant Facts

An evidentiary hearing was held before the undersigned Magistrate Judge on Tuesday, June 11, 2013. Officers Brock Nunley and Mike Guffey were the only witnesses to testify. Officer Brock Nunley is employed by the Soddy Daisy Police Department where he has been assigned primarily to patrol for the past three years. Nunley previously worked in dispatch for

one year.  Officer Mike Guffey is employed by the Soddy Daisy Police Department where he has worked as a patrol officer for the past four years.  Officer Nunley was working the third shift from 6:00 pm to 6:00 am on the night in question.

On December 27, 2012, at approximately 10:00 pm, Officer Guffey was in the drive-thru at McDonalds when one of the McDonalds employees advised Officer Guffey of a possible intoxicated driver and underage children in the black Ford in front of him.  Officer Nunley was also dispatched.  Officer Guffey ran the tags on the car, and dispatch informed Officer Guffey that the vehicle's registration was expired.  Officer Guffey was also informed that Hamilton County had an arrest warrant out for the owner of the black Ford. Kenneth Scott was identified as the owner of the vehicle.

Officer Guffey began to follow the car.  As Officer Guffey was in pursuit of the black Ford, he briefly lost track of the car but later found it approximately 100 yards down the road. Officer Guffey activated his lights as the vehicle was turning into 10206 Dallas Hollow Road in Soddy Daisy.  Guffey parked in the driveway of 10206 Dallas Hollow Road behind the black Ford.  Defendant, who had been sitting in the front passenger seat, then exited the vehicle. Officer Guffey asked Stacy Scott, driver of the vehicle and Defendant's wife, if the man who exited the car was Kenneth Scott. Stacy Scott said that it was. Officer Guffey twice directed Defendant to stop, but Defendant waved Officer Guffey off and continued on about 100 yards and entered a residential trailer located at 10204 Dallas Hollow Road.  Officer Nunley arrived and Guffey advised him of the situation.  Officer Guffey then walked up to the front of the residence at 10204 Dallas Hollow Road and Officer Nunley walked to the back to secure it.  A Mr. Cox came out of the front of the residence at 10204 Dallas Hollow Road.

Officer Guffey informed Mr. Cox that there was an arrest warrant out for Defendant. Mr. Cox stated that no one was allowed inside the house. Defendant then came out and stood in front of the residence. Defendant asked what was going on, and Officer Guffey informed him of the warrant, handcuffed him, and detained him. Guffey then told Nunley he had secured the defendant, and Nunley returned to the black Ford parked in the driveway at 10206 Dallas Hollow Road. Ms. Scott was still sitting in the Ford.

Officer Nunley asked Ms. Scott for her driver's license, and Ms. Scott handed Officer Nunley a Florida driver's license. Ms. Scott informed Officer Nunley that the license was suspended. Officer Nunley testified that driving on a suspended license is a citable or arrestable offense; however, Ms. Scott was neither cited nor arrested. Officer Nunley asked Ms. Scott if she had any weapons or drugs on her, and Ms. Scott handed Officer Nunley her purse and said that he could search it. Officer Nunley searched the purse and found a .223 rifle round.

Soddy Daisy Police Officer Elrod arrived on the scene either during Nunley's search of Ms. Scott's purse or just after, and, in Officer Nunley's presence, Officer Elrod asked Ms. Scott for consent to search the vehicle. Ms. Scott told him that she could not give consent because it was not her vehicle; however, Officer Elrod informed Ms. Scott that she could give consent since she had been driving the car and was in control of the car. Ms. Scott was also informed that she could withdraw consent at any time during the search. Ms. Scott then gave oral consent to search the vehicle. Nunley testified Ms. Scott was not arrested at this time, just detained. Officer Elrod began searching the vehicle and pulled out a large duffle bag. Officer Elrod also told Officer Nunley to come look at the bag. The officers found a .223 rifle, 9 mm. Beretta, approximately six Glock magazines, eight AR-15 magazines, police duty belts, a tactical holster, handcuffs, a slapjack, knives, approximately 300 rounds of ammunition, Kevlar helmet, four

bullet-proof vests, and a bank bag containing jewelry inside the duffle bag. (Government's Response at 2 (Doc 14)). Nothing was found lying in the open of the car; and all the items were recovered from the duffle bag itself. Officer Nunley does not recall if the bag was initially zipped, but it was open when he came around for examination. The Defendant later told the officers that the guns were given to him by a friend and that Defendant was going to give them to his son.

Ms. Scott gave written consent to search the vehicle following the search. Ms. Scott did not have any reluctance to sign the form. While it is not written policy of the Soddy Daisy Police Department to obtain written consent after a search, Officer Guffey testified that it was just something he did.

Officer Guffey was with Defendant about 100 yards away outside at 10204 Dallas Hollow Road while the Ford was being searched. Officer Guffey testified that the black Ford was visible from the porch, but that he did not know if Defendant was aware of the search. The officers did not ask for Defendant's consent to search the vehicle; however, if Defendant was aware of the search, he never expressed opposition to it. Soon after the Ford was searched, Hamilton County deputies arrived, and the Defendant was taken away.

Soddy Daisy Police Sergeant Brown arrived on the scene following the search of the vehicle and contacted Soddy Daisy Detective Kilgore, who later arrived. Other officers informed Detective Kilgore about what was found in the Ford. Ms. Scott also told the officers that she had recently seen Defendant smoking marijuana, and that marijuana and firearms were in the house. Detective Kilgore put this information together in an affidavit for a warrant to search the residence at 10204 Dallas Hollow Road. It took approximately three hours to complete the process of obtaining the search warrant. The search of the residence revealed four

bags of marijuana with a total field weight of 1.4 ounces, marijuana smoking pipes, ammunition, a bail bondsman badge, a bag of police clothing, brass knuckles, and gun paraphernalia. (Government's Motion at 2 (Doc. 14)). Defendant was not present during the search of the house.

## III. Analysis

Defendant has moved to suppress this search arguing, *inter alia*, that (1) Ms. Scott lacked common authority to consent to the search of the black Ford; (2) even if Ms. Scott did have common authority as to the vehicle, she did not have the authority to allow the officers to search the duffle bag in the back seat of Defendant's vehicle; and (3) the search warrant affidavit did not contain sufficient facts for a finding of probable cause. The Government in response asserts that Ms. Scott did have sufficient authority to validly consent to the search of the vehicle, that Ms. Scott did not limit her consent to any particular items in the vehicle, and that the search warrant affidavit provided probable cause to search the home.

*1. Consent*

Valid consent to search a premises is recognized as an exception to the Fourth Amendment's requirement of a search warrant. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006). The government bears the burden of demonstrating that consent was "freely and voluntarily given," without influence of duress, coercion, or mere submission to authority. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968), *United States v. Van Shutters*, 163 F.3d 331, 335 (6th Cir.1998). That burden must be met with "clear and positive testimony." *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000); *Van Shutters*, 163 F.3d at 336. The government need not prove that it was the defendant himself who gave consent to search. "A search does not violate the Fourth Amendment where police obtain consent to search from one who possesses common

authority over the premises." *United States v. Clutter*, 914 F.2d 775, 777 (6th Cir.1990); *see also United States v. Matlock,* 415 U.S. 164, 171 (1974) (holding that "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that the consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.") The Court in *Matlock* explained that common authority does not merely relate to the property interest a third-party may have in the property, and stated that "[t]he authority which justifies the third-party consent does not rest upon the law of property. *United States v. Matlock,* 415 U.S. 164, 171 (1974). Further, the Court explained that common authority rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.; see also United States v. Burns,* 298 F.3d 523, 542 (6th Cir. 2002) ("The concept of 'common authority or control' enables a cooccupant such as Burns to consent to a search if that party has the right to use or possess the property.")

The Defendant argues that Ms. Scott lacked common authority to consent to the search of the vehicle. According to defendant, Ms. Scott could not give valid consent on his behalf to search his car because "Ms. Scott was the driver of the vehicle., … officers knew Ms. Scott was in custody for driving on a suspended license, [she was a] a temporary visitor, … Mr. Scott was the only owner of the vehicle and ….he was present…." (Defendant's brief at Page ID # 21). [1]

[1] Defendant offered no authority in support of this contention. Given the importance of this issue to the defendant's motion to suppress, it would have been helpful to have an examination of relevant cases from the defendant.

As previously discussed, it is well settled that a person with common authority over the premises to be searched may give valid consent to search the premises. *United States v. Matlock,* 415 U.S. 164, 170 (1974) ("the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared….") In *Matlock*, police asked the girlfriend of the defendant for permission to search her and the defendant's bedroom. This conversation took place at the front door of the house while the defendant was detained in a squad car parked nearby. The *Matlock* Court concluded the girlfriend, as co-occupant of the bedroom, had common authority to give valid consent and that the consent of the defendant, who had been absent from the discussion between police and his girlfriend, was not necessary for police to legally search the bedroom. *Id.* at 170 and 177.

On the other hand, it is also well settled that if a co-occupant of the premises to be searched is present at the time consent is given by the other co-occupant and if he or she expressly refuses consent, then the consent to search is not valid for Fourth Amendment purposes. *Georgia v. Randolph,* 547 U.S. 103, 105 (2006) *(*wife's consent to search residence was deemed invalid as to her husband where husband was present during the conversation about consent and he expressly refused consent.) As stated by the *Randolph* Court, "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out."), *accord United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir. 2007)*; United States v. Penney*, 576 F.3d 297, 309 (6th Cir. 2009). Stated another way, police do not have an affirmative duty to seek out a nearby co-occupant to ask for consent when another co-occupant with common authority has already given it. Police may not, however, remove a co-occupant from the premises to be searched specifically for the purpose of

avoiding an objection to the consent to search. *Randolph,* 547 U.S. at 121 ("So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand….")

With these principles in mind, I will first examine whether Ms. Scott had common authority over the black Ford and then consider whether Mr. Scott was "present" at the time consent was given.

Ms. Scott was the driver of the vehicle when the vehicle was stopped and the officers approached the vehicle. The Defendant exited the vehicle, waved off the officers, walked approximately 100 yards away, and entered a residence leaving Ms. Scott with the keys and in control of the vehicle. Ms. Scott had possession of the vehicle with Mr. Scott's permission, and Mr. Scott left the scene voluntarily. Ms. Scott's mutual use and control of the vehicle was sufficient to establish common authority over the vehicle. *See United States v. Guillen,* 1998 WL 252759 *3 ("[v]oluntary consent by the driver/owner of a vehicle is effective as to its passengers under the "common authority" doctrine."); *United States v. Guzman,* 995 F.2d 1068, *2 (6th Cir. June 1, 1993) (finding co-defendant had common authority over the vehicle which was searched, the court stated, "She was driving the car, and therefore controlling it, when pulled over."); *United States v. Clemmons,* 2010 WL 2902159 *5 (W.D. Tenn. Feb. 5, 2010) ("Antoine Clemmons, as the driver, had the authority to give the detectives consent to search the vehicle"); *United States v. Robinson,* 2007 WL 2138635, *4 n. 5 (E.D. Tenn. July 23, 2007) (stating that driver of vehicle had authority to consent to search), *United States v. Crain,* 33 F.3d 480, 484 (5th Cir. 1994) (bailee of automobile who permitted co-occupant to drive assumed risk that co-

occupant of vehicle might consent to search of automobile); *United States v. Morales*, 861 F.2d 396, 399 (3d Cir. 1988) (giving another control over the car as driver conferred upon that person the power to consent to a search of the car.)

Defendant was not present at the time police asked Ms. Scott for consent to search the vehicle. By his own volition, he was about 100 yards away. Consequently, pursuant to *Matlock* and *Randolph*, his consent was not required to search the vehicle. Furthermore, if he was able to see the search occurring, he did not at any time object to it. I conclude the search of the vehicle meets constitutional muster.

*2. Consent to Search the Duffle Bag*

When officers rely upon consent as the basis for a warrantless search, the scope of the consent given determines the permissible scope of the search. *Florida v. Jimeno*, 500 U.S. 248, 251-52 (1991). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id. at 251*. In *Jimeno*, the Supreme Court held that "there is no basis for adding to the Fourth Amendment's basic test of objective reasonableness a requirement that, if police wish to search closed containers within a car, they must separately request permission to search each container." *Florida v. Jimeno*, 500 U.S. 248 (1991); *see also, United States v. Canipe*, 569 F.3d 597, 605 (6th Cir. 2009) (a general consent to search a vehicle ordinarily extends to unlocked containers inside the vehicle even if officers did not tell the suspect what they were looking for); *United States v. Fowler*, 1994 WL 685417, at 6 (6th Cir. 1994) ("although a suspect may limit the area subject to a consensual search, a general consent to search a vehicle includes any unlocked compartment or containers within the vehicle").

The Defendant contends that Ms. Scott's consent to search of the vehicle did not extend to the duffle bag in the back seat of the vehicle. However, Ms. Scott did not limit her consent in any way. Ms. Scott gave general consent, orally, prior to the search of the vehicle. At no point during the search did Ms. Scott tell the officers to stop searching the vehicle even when they began to search the duffle bag. For those reasons, I conclude that the officers did lawfully search the duffle bag found in the back of the vehicle.

*3. Probable Cause*

The Fourth Amendment provides "no warrant shall issue but upon probable cause, supported by oath or affirmation...." *U.S. Const. Amend IV*. To establish probable cause to justify a search warrant, an affidavit must set forth facts which indicate "a fair probability exists that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal citations omitted); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005). The Court must consider the totality of the circumstances as set out in the four corners of the affidavit. *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (totality of the circumstances standard); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971) (Court limited to review of affidavit itself).

A warrant must be upheld "so long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing . . ." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). A magistrate's probable cause determination should be made in "realistic and common sense fashion" and reviewed in the same manner. *United States v. Finch*, 998 F.2d 349 351 (6th Cir. 1993) (further citations omitted).

The Sixth Circuit in *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996)

described the application of the *Gates* test:

> In applying its "totality of the circumstances" test, the *Gates* court identified three factors in determining whether probable cause existed: 1) the basis of the informant's knowledge; 2) the reliability of the informant; and 3) the corroborative evidence presented by the government. *Gates*, 462 U.S. at 230-32, 245, 103 S.Ct. at 2328-29, 2335-36; *Leake*, 998 F.2d at 1363. The *Gates* court noted that these factors are not to be analyzed as "separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328. Rather, the reviewing court is to weigh them together in determining whether they form a substantial basis for finding probable cause. *Id.* The strength of one or more of these factors may compensate for the deficiencies of another factor. *Gates*, 462 U.S. at 233-34, 103 S.Ct. at 2329-30.

(Internal footnote omitted), *see also United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999)

The Defendant argues that the affidavit "cited insufficient information from which to support the issuance of a search warrant" and "merely recites past convictions of Mr. Scott and information alleged by Ms. Scott who was in custody and stood to possibly gain custody of her children if Mr. Scott was arrested." (Defendant's Motion at 3 (Doc. 12)). However, it has been found that "persons with personal motives are often the source of very reliable information". *United States v. Czuprynski*, 46 F.3d 560, 564 (6th Cir. 1995); *see also, United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1995) ("When a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of circumstances' presents a 'substantial basis' for conducting a search for that evidence").

Here the affidavit includes information provided by Ms. Scott to police officers. Ms. Scott told the officers that she had been at the residence for the last three days and had seen the Defendant smoking marijuana. Ms. Scott also stated that Defendant had marijuana and weapons in the house. Ms. Scott's information was corroborated by the Defendant's criminal history for possession of controlled substances and by the objects found in the Defendant's vehicle. The affidavit also contained a statement from Detective Kilgore that, based on the Defendant's

criminal history, he believed Defendant to be a convicted felon and should not be in possession of any firearms. Looking at the totality of circumstances set forth in the affidavit, there is probable cause based on these facts. Finally, even if the information concerning what was found in the black Ford were excised from the affidavit, the affidavit, based on all the other information, would be sufficient to support probable cause to search the residence.

## IV. Conclusion

Accordingly, for the reasons stated herein, it is RECOMMENDED that the Defendant's motion to suppress be DENIED. [2]

S /*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers,* 829 F.2d 1370 (6th Cir. 1987).