UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | 1:13-CR-17 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| KENNETH SCOTT | ) | |

**MEMORANDUM**

Defendant Kenneth Scott ("Defendant") has filed a motion to suppress all evidence seized by law enforcement in this case (Court File No. 12). Defendant's motion to suppress was referred to United States Magistrate Judge William B. Mitchell Carter, who held a hearing and subsequently filed a report & recommendation ("R&R") recommending Defendant's motion be denied (Court File No. 18). Defendant timely objected (Court File No. 19). For the following reasons, the Court will **ACCEPT** and **ADOPT** the R&R (Court File No. 18). Accordingly, the Court will **DENY** Defendant's motion to suppress (Court File No. 12).

**I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**[1,2]

On December 27, 2012, at around 10:00 p.m., Officer Guffey was in the drive-thru at McDonalds and was told by an employee that the driver of the vehicle in front of him may be intoxicated. Officer Guffey checked the tags and discovered the vehicle's registration had expired. He also learned Defendant, the owner of the vehicle, had an outstanding arrest warrant in Hamilton

---

[1] On June 11, 2013, the magistrate judge held an evidentiary hearing at which Officers Brock Nunley and Mike Guffey testified.

[2] The Court will incorporate the magistrate judge's findings and will only recount the facts necessary for addressing Defendant's objections.

County.

Officer Guffey followed the vehicle and activated his lights as the vehicle turned into the driveway at 10206 Dallas Hollow Road in Soddy Daisy, Tennessee. Officer Guffey parked in the driveway behind the vehicle. Defendant, who had been sitting in the passenger seat, then exited the vehicle. Officer Guffey asked the driver, Defendant's wife Stacy Scott, if the man who exited was Defendant and she confirmed. Officer Guffey directed Defendant to stop twice but Defendant waved off Officer Guffey and continued toward a residential trailer located at 10204 Dallas Hollow Road. Around that time, Officer Nunley arrived as back-up.

Officer Guffey went to the front of the residence at 10204 Dallas Hollow Road and a man named Mr. Cox met him at the door. Although Mr Cox initially stated no one was allowed inside the house, Defendant came out and asked what was going on. Officer Guffey told Defendant about the warrant, handcuffed him, and detained him. Officer Nunley, who was with Officer Guffey at the residence, returned to the vehicle where Ms. Scott was still sitting. Officer Nunley asked Ms. Scott for her license. She handed him a Florida license that she admitted was suspended. Officer Nunley then asked if she had any drugs or weapons. She handed him her purse and gave him permission to search it. Office Nunley found a .223 rifle round in her purse.

Officer Elrod arrived at the scene around this time. Officer Elrod asked Ms. Scott for her consent to search the vehicle. At first, Ms. Scott stated she could not give consent because it was not her vehicle but Officer Elrod told her she could give consent since she had been driving and was in possession of the vehicle. Ms. Scott then gave oral consent.[3]

---

[3] According to Officer Nunley who was also present, Ms. Scott had been detained at this point but not arrested.

Officer Elrod began searching the vehicle and discovered a duffle bag. Together, the officers looked in the bag and found the following: a .223 rifle, a 9 mm Beretta, approximately six Glock magazines, eight AR-15 magazines, police duty belts, a tactical holster, handcuffs, a slapjack, knives, approximately 300 rounds of ammunition, a Kevlar helmet, four bullet-proof vests, and a bank bag full of jewelry. After the initial search, Ms. Scott then gave written consent for the officers to search the vehicle.

Officer Guffey was standing approximately 100 yards away with Defendant at the residence while the search took place. Although the vehicle was visible from where they were standing, Officer Guffey did not know whether Defendant was aware of the search. The officers did not ask for Defendant's consent to search but, to the extent he was aware of the search, he expressed no opposition. After the vehicle was searched, Hamilton County deputies arrived and Defendant was taken away.

Ms. Scott told the officers she had seen Defendant smoking marijuana recently and that marijuana and firearms could be found in the house. Using this information, Detective Kilgore drafted an affidavit for a search warrant of 10204 Dallas Hollow Road. Upon obtaining the warrant, officers found the following items in the residence: four bags of marijuana weighing a total of 1.4 ounces, marijuana smoking pipes, ammunition, a bail bondsman badge, a bag of police clothing, brass knuckles, and gun paraphernalia.

On February 26, 2013, Defendant was indicted by a federal grand jury and charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and being a user of or being addicted to a controlled substance while in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3). Defendant's motion to suppress is pending.

## II. STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C). However, *de novo* review does not require the district court rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). The magistrate judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting him in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). The magistrate judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

## III. DISCUSSION

Defendant objects to two of the magistrate judge's findings. First, he objects to the finding that Ms. Scott had authority to consent to the search of the duffel bag located in the back seat of the vehicle. Second, he objects to the finding that the affidavit adequately supported the issuance of the search warrant. The Court will address each issue in turn.

### A. Consent to Search Duffel Bag

Defendant objects to the magistrate judge's finding that Ms. Scott had authority to consent to the search of the duffel bag that was located in the back seat of the vehicle. Defendant argues the duffel bag should have been afforded a high degree of privacy, and he contends the situation here is analogous to *United States v. Taylor*, 600 F.3d 678 (6th Cir. 2010), where the United States Court of Appeals for the Sixth Circuit determined a female apartment tenant did not have apparent

4

authority to consent to the search of a shoebox belonging to her male friend. Defendant argues Ms. Scott only consented to having the vehicle searched after law enforcement advised her that she could consent. Moreover, Defendant points out that Ms. Scott voluntarily offered her purse to the officer to search at the outset but did not offer the duffel bag or indicate that the duffel bag belonged to her. Finally, noting the language in the affidavit, Defendant points out that Officer Elrod only asked to search the vehicle after he observed the duffel bag; thus, presumably the reason he wanted to search the duffel bag was because he believed the bag belonged to Mr. Scott not Ms. Scott. Defendant claims these facts cannot serve the basis for a lawful search.

Under the Fourth Amendment, a warrantless search is valid "when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006); *see United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974) (common authority "rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched"). The Government bears the burden of establishing the validity of the warrantless search. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).

Defendant no longer disputes that Ms. Scott had common authority to consent to the search of the vehicle. Rather, he contends her consent did not extend to the duffel bag in the back seat of the vehicle. Thus, the scope of Ms. Scott's consent is at issue. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would

5

the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). In *Jimeno*, the United States Supreme Court determined it was reasonable for an officer to conclude "a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car." *Id.; see United States v. Fowler*, 42 F.3d 1389 (6th Cir. 1994) ("Although a suspect may limit the area subject to a consensual search, a general consent to search a vehicle includes any compartment or containers within the vehicle."). Moreover, law enforcement generally does not have to obtain permission to search by making a separate request for every individual container within a vehicle. *See Jimeno*, 500 U.S. at 252 ("Respondent argues, and the Florida trial court agreed with him, that if the police wish to search closed containers within a car they must separately request permission to search each container. But we see no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness.").

Here, as noted by the magistrate judge, Ms. Scott gave the officers her consent to search the vehicle and did not place any explicit limitations on the scope of the search. Moreover, when they entered the duffel bag, she did not stop them. Finally, while Defendant may argue a duffel bag is entitled to a heightened degree of privacy, the case law above describing the general rules pertaining to searches of closed containers is just as applicable to the facts of this case.

Defendant argues the Court should be guided by the decision in *United States v. Taylor*, 600 F.3d 678 (6th Cir. 2010). In *Taylor*, law enforcement obtained the permission of a female tenant to search the premises where the defendant, who had a warrant out for his arrest, was found. *Id.* at 679. In the corner of a closet in a spare bedroom, the officers found a closed shoebox that was labeled as containing men's basketball shoes. Moreover, the shoebox was surrounded by and covered in part

6

by men's clothing. Taking into account, *inter alia*, the circumstances of the search and where the shoebox was found, the fact that the officers believed the shoebox likely belonged to the defendant, and--given the ambiguity surrounding the box--the fact that the officers failed to inquire further, the Sixth Circuit determined the female tenant lacked apparent authority to consent to the search of the shoebox. *Id.* at 685.

Here, however, it is no longer disputed that Ms. Scott had common authority over the vehicle as the driver and the person in possession of the vehicle at the time of the search. In fact, Defendant walked away from the vehicle despite being asked by the officer to stop, leaving the duffel bag in the vehicle with Ms. Scott. Moreover, the facts of the search in *Taylor* are distinguishable both with regard to location of the shoebox and the immediate surroundings. In *Taylor*, the court honed in on the fact that law enforcement found the shoebox in a little-used room and the box was surrounded by what appeared to be the defendant's belongings. Any reasonable observer would have concluded from these facts that it was highly likely the shoebox belonged to the defendant and, to the extent any ambiguity existed, the officers should have inquired further. In contrast, here, although the duffel bag was in the back seat, it was not necessarily hidden and, from the magistrate judge's factual findings, there were no obvious indicators linking the duffel bag to Mr. Scott rather than Ms. Scott. Moreover, in the same way the officers chose to search Ms. Scott's purse, they had just as much reason to want to search the duffel bag inside of the vehicle.

Taking all of the above into account, the Court agrees with the magistrate judge that the officers lawfully searched the duffel bag.

**B.    Search Warrant**

Defendant also objects to the magistrate judge's finding that the affidavit was sufficient to

7

support the issuance of the search warrant. Defendant contends the affidavit was "bare bones," and was based solely upon the word of Ms. Scott. Yet, according to Defendant, Ms. Scott's credibility was questionable. Moreover, he points out that although Ms. Scott was driving with a suspended license, the officers did not charge her or arrest her. Hence, it appears she may have even been rewarded for assisting law enforcement.

The Fourth Amendment provides "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched." U.S. Const. amend. IV. As a general rule, in determining whether probable cause exists to authorize the search, the magistrate judge or other judicial officer should consider the "totality of the circumstances" and ask whether "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The judicial officer must be presented with "sufficient information" to enable him to determine whether probable cause exists; "his action cannot be a mere ratification of the bare conclusions of others." *Id.* at 239. Three factors that can be taken into account together when determining whether probable cause exists are "(1) the basis of the informant's knowledge; (2) the reliability of the informant; and (3) the corroborative evidence presented by the government." *United States v. Shamaeizadeh*, 80 F.3d 1131, 1137 (6th Cir. 1996).

As noted by the magistrate judge, Ms. Scott told the officers she had seen Defendant smoking marijuana recently and that marijuana and firearms could be found in the house. This information was included in the affidavit. Although Defendant questions Ms. Scott's credibility, the magistrate judge is correct that an individual's personal motives or conflicting interests do not automatically make her incapable of providing reliable information. And in fact, Ms. Scott's

8

statements were corroborated both by the objects found in the vehicle and Defendant's criminal history. The Court also observes as did the magistrate judge that the affidavit contained a statement from Detective Kilgore noting that, in light of Defendant's criminal history, Defendant was a convicted felon and should not be in possession of firearms. Taking all of this into account, the Court agrees with the magistrate judge that there was probable cause to search the residence and the warrant was properly issued.

## IV. CONCLUSION

For the foregoing reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 18). The Court will **DENY** Defendant's motion to suppress (Court File No. 12).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**